ROB BONTA
Attorney General of California
LARA HADDAD
R. MATTHEW WISE
Supervising Deputy Attorneys General
NANDING CHEN (SBN 348808)
JOE MEEKER (SBN 335725)
S. CLINTON WOODS (SBN 246054)
CAROLYN DOWNS (SBN 353455)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6720
Fax: (916) 731-2124
E-mail: Carolyn.Downs@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**UNITED STATES NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; BRADFORD WILSON,** in his official capacity as Archivist of the United States,<br><br>Defendants. | Case No. 5:26-cv-11868-NW<br><br>**DECLARATION OF PROFESSOR KEITH L. CAMACHO IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Keith L. Camacho, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am a Professor of Asian American Studies at the University of California at Los Angeles, where I have taught since July 1, 2006. My academic research and teaching focuses on Chamorro cultural and historical politics, as well as American and Japanese colonialisms and

militarisms. I have authored two books on these subjects, publishing them in 2011 and 2019. Much of my work involves recovering and working with original materials, such as the records and archives housed at the San Bruno National Archives Facility (hereinafter “San Bruno Archives”).

3. Prior to joining the faculty at UCLA, I was an Assistant Professor of History at the University of Guam. I received my Ph.D. in history from the University of Hawaiʻi at Mānoa in 2005, and also received an MA in Pacific Islands studies from that institution in 1998. I completed my BA in English Literature and secondary education from the University of Guam in 1996.

4. The San Bruno National Archives house a unique collection of materials that hold special significance for all California residents, and researchers like me. For example, virtually all immigration and cultural records for Pacific Islanders from places such as Guam, Hawaiʻi, Saipan, and Samoa are housed at the San Bruno Archives. A large percentage of these materials are only available to be viewed in person, as they have not been digitized. Many other materials are fragile and/or practically impossible to scan or digitize. As a result, my students and I make frequent trips to the San Bruno National Archives Facility as part of our work.

5. Materials housed in the San Bruno National Archives are invaluable for our work. Oftentimes the only way to complete the research and translation my students and I do is to physically go to the San Bruno Archives. For example, for both of my books I was required to spend many days at the San Bruno Archives, comprising several research stints that would last between two weeks and two months at a time. Without the San Bruno Archives, completing the academic research necessary to finish either of my books would have been impossible.

6. Moreover, despite the distance between Los Angeles and the Bay Area, I regularly encourage and assign my students work that requires them to visit the San Bruno Archives. Since my appointment at UCLA in 2006, I estimate that 10% of my students, most of whom are California residents, make 1-2 trips to the San Bruno Archives annually. Some of these research trips, particularly for graduate students, are paid for by the University.

7. Closing the San Bruno Archives will cause significant harm to my work and the work of my students. As previously mentioned, most of the records required for my work are not available online in any capacity. Some records are too old and fragile to be digitized. For example, many records of American naval governance and World War II have suffered damage from exposure to humid climates in the Pacific (e.g., Guam, Samoa) and can only be carefully viewed in person. Other records are too voluminous to be digitized or photocopied practically and thus the only way to complete the research is to access the physical document. For example, the San Bruno Archives contains hundreds of thousands of pages about US governance (e.g., US Navy, US Department of Interior) in the Pacific Islands, as well an equally large repository of Pacific Islander enlistment records in the US Army and the US Navy. The World War II collection is just as expansive. All of these factors make bulk digitization impractical.

8. Relocating these records to Kansas City or another National Archives facility would cause great hardship to my research, and would likely end several areas of inquiry. While it is relatively convenient for my students and me to travel to the San Francisco Bay Area, it would be orders of magnitude more difficult and expensive to travel to another facility, likely requiring the University to pay thousands of dollars for flights and lodging to complete the research. Depending on where the records are moved, it may be cost-prohibitive to continue this area of research. Moreover, if the records are not moved to the same location, my research may take trips to multiple locations. The harm to low income, minority, and working class students who are paying their own way to do this research would be particularly acute.

9. Moreover, the archivists employed at the San Bruno Archives are specifically trained to be familiar with these types of records, how to locate them, and how to handle them. For example, immigration and internment records often contain irregular or archaic romanizations of Pacific Islander names, and local staff with the linguistic proficiencies are required to meaningfully parse and assist with records requests. The loss of the institutional knowledge of those archivists would greatly slow down the efficiency of our research.

10. As mentioned above, many of these records are extremely fragile and delicate. Moving them, even if the move is planned and deliberate, risks damaging or destroying the

records. For example, the US records of the World War II military tribunals in Guam contain fragile and formerly classified legal memos that risk damage if they were to be physically moved.

11. If the San Bruno Archives is closed, faculty and students from throughout California will lose convenient access to a rich set of resources, which will impede research and teaching. For Pacific Islander communities that are heavily concentrated on the West Coast, the closure of the San Bruno Archives would be devastating. The San Bruno Archives houses the only repository of physical records necessary for Pacific Islanders to research their histories, cultures, genealogies and immigration status. Moving the records to a different state would effectively deprive those communities of access to them.

12. I am aware of dozens of other faculty at UCLA and other Southern California universities that also use the San Bruno Archives for similar purposes to conduct their academic research. Those university faculty and their students would also be negatively affected by the planned closure.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 13th day of October, 2026, in Los Angeles, California.