ROB BONTA
Attorney General of California
LARA HADDAD
R. MATTHEW WISE
Supervising Deputy Attorneys General
NANDING CHEN (SBN 348808)
JOE MEEKER (SBN 335725)
S. CLINTON WOODS (SBN 246054)
CAROLYN DOWNS (SBN 353455)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6720
Fax: (916) 731-2124
E-mail: Carolyn.Downs@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**STATE OF CALIFORNIA,**

Plaintiff,

**v.**

**UNITED STATES NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; BRADFORD WILSON,** in his official capacity as Archivist of the United States,

Defendants.

Case No. 5:26-cv-11868-NW

**DECLARATION OF BRIAN DEWEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Brian Dewey, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I work for the California State Department of Parks and Recreation, formerly State Parks. My job title is Assistant Deputy Director, Chief, Facilities and Development Division, and I have worked with the department for 14 years. With 280 state park units, over 340 miles of

coastline, 970 miles of lake and river frontage, 15,000 campsites, 3,543 miles of non-motorized trails, more than 637 miles of motorized trails, 3,195 historic buildings and more than 11,000 known prehistoric and historic archaeological sites, the department contains the largest and most diverse recreational, natural and cultural heritage holdings of any state agency in the nation. Part of my job responsibilities include being involved in developing educational and cultural programs for State Parks visitors to enjoy.

3. When any project occurs on State Parks' property, we are required by state and/or federal law to engage in an evaluation to determine the impact any project may have on the environment. When a project has a federal nexus, such as when it receives federal funding or is being acquired from federal holdings, federal law requires the state to undertake evaluations pursuant to federal specifications and standards. A significant part of that evaluation process requires Parks staff or their contractors to visit the San Bruno National Archives Facility (hereinafter "San Bruno Archives") to do research on relevant historical records. This is necessary because the only place to view historical records regarding several of our properties is at the San Bruno Archives. Those records may include maps, construction or architectural records, archeological records, photographs, or other artifacts. Because these records are almost always not available to view online, the only place to view those records is at the San Bruno Archives. Moreover, the loss of trained archivists at the San Bruno Archives will also slow us down, as they are excellent at locating records much faster and more efficiently than we would be alone.

4. For example, when the Angel Island Immigration Station barracks were refurbished in the 2000s, State Parks received federal funds, constituting a federal nexus. As a result staff and their contractors were required by state and federal law to engage in extensive environmental evaluation to determine the best way to complete the refurbishment. The only way to view the archival records necessary to complete that evaluation was to visit the San Bruno Archives in person. Those records included historical maps, and old photographs and schematics, that were only available in person at the San Bruno Archives, and necessary for State Parks used

to determine the legally appropriate level of study and environmental remediation. That project was completed in 2009.

5. The Angel Island Immigration Station barracks project required State Parks staff and their contractors to visit the San Bruno Archives on at least 10 different occasions. Because those necessary records were housed nearby in the Bay Area, the cost to access those records was relatively minimal. However, if the records were in another far-flung locale such as Kansas City or Maryland, the cost to access the records would increase astronomically. Those additional travel and lodging costs would be paid for out of the project's budget, which is ultimately paid for by the State itself.

6. State Parks is slated to begin work on similar projects that will also require in-person visits to the San Bruno Archives. For example, one of the Julia Morgan cabins that were once located near the Angel Island Immigration Station is in the early planning phases to be reconstructed within the next five years, depending on funding. This and other upcoming potential projects related to ongoing property acquisitions may require similar environmental and historical research, and that research must be completed viewing records and artifacts that are housed at the San Bruno Archives. If we are not able to view those records, we may not be able to meaningfully begin these projects. If the records are moved to another state, the cost to view those records will be substantially increased and will ultimately cost the state money. During the period of time the records are unavailable because they are in the process of being moved, the department will be unable to make progress on either project.

7. Delaying either project may subject the department to additional costs, such as additional travel expenses, staff time, and contractor costs.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 13th day of October, 2026, in Sacramento, California.

DocuSigned by:
Brian Dewey
4B24ADBC7E7B4B1...