ROB BONTA
Attorney General of California
LARA HADDAD
R. MATTHEW WISE
Supervising Deputy Attorneys General
NANDING CHEN (SBN 348808)
JOE MEEKER (SBN 335725)
S. CLINTON WOODS (SBN 246054)
CAROLYN DOWNS (SBN 353455)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6720
Fax: (916) 731-2124
E-mail: Carolyn.Downs@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br>Plaintiff,<br>**v.**<br>**UNITED STATES NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; BRADFORD WILSON,** in his official capacity as Archivist of the United States,<br>Defendants. | Case No. 5:26-cv-11868-NW<br>**DECLARATION OF ASSISTANT PROFESSOR KOURTNEY KAWANO IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Kourtney Kawano, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am an Assistant Professor at the University of California at Berkeley School of Education, where I have taught since fall 2025. Among other duties, I conduct academic research

related to historical connections between Asian American and Pacific Islander (AAPI) communities, including connections between the oral histories of those communities.

3. Much of my work draws on contemporary ethnographies and interviews. However, regular review of archival material related to AAPI communities, such as genealogical records, historical documentation of school-community relations, and place-based education policies, helps me to make sense of patterns that I see through contemporary ethnographies and leads to a more rigorous analysis. I have previously used archival materials to inform and enrich my work. For example, as part of a previous research project, I made several visits to the Hawai'i State Archives in Honolulu, Hawai'i to review archival materials.

4. I have just begun a new research project on California-based Pacific Islanders where I intend to use archival materials to help establish historical connections between communities that are the subject of my contemporary ethnographic work. As part of that research, I had intended to make several visits to the San Bruno National Archives Facility ("San Bruno Archives") to review materials stored there.

5. The San Bruno Archives Facility has a unique collection of materials relevant to my research and AAPI history, including certain original records from the time period when Angel Island Immigration Center was in operation, the period of the internment of Japanese Americans during World War II, and Native Hawaiian and Samoan experiences under U.S. territorial governments. A large percentage of these materials are only available to be viewed in person.

6. Materials housed in the San Bruno Archives are invaluable for my work and that of my students. In particular, many of my students in the undergraduate class I teach, "Native Hawaiian, Pacific Islander, and Asian American Educational Struggles and Collective Learning for Racial Justice," choose to undertake semester-long projects centered on place-based histories, including the state of California and Northern California specifically. Many of those students select projects that would essentially require visits to the San Bruno Archives to review archival materials and historical sources. I would estimate that of the 60 students I've had across two semesters of teaching my undergraduate class, around 20% of them have selected projects that

required them to visit the San Bruno Archives. Some of those students make trips to the San Bruno Archives as frequently as once a week.

7. The work my students do at the San Bruno Archives is important not only to their specific research projects but to their education and development as historians in general. Allowing students to conduct direct research based on primary resources and archival materials strengthens their ability to gather and analyze data from multiple perspectives.

8. Closing the San Bruno Archives will cause significant harms to my work and the work and studies of my students.

9. As previously mentioned, many of the records my work requires are not available online in any capacity. It is not an exaggeration to say that the closure of the San Bruno Archives would completely derail my current research project. Although it is currently relatively easy for me to visit the San Bruno Archives, depending on where the records are moved, it may be cost-prohibitive to continue this project. Moreover, if the records are not moved to the same location, it may take trips to several locations. Thus, if the San Bruno Archives are closed, I will be forced to either bear increased costs associated with necessary travel to a different facility or produce a less complete and rigorous analysis.

10. If the San Bruno Archives close, my students would lose out on a vital resource for pursuing their independent research and for developing their skills as historians. It would be impractical for undergraduate students to travel out-of-state to complete their research projects, so students with projects that rely on materials in the San Bruno Archives would be unable to complete projects that they've already started or would have to choose a different topic altogether. Closing the San Bruno Archives Facility would harm my ability as an educator to assist students in their educational development.

11. Further, the San Bruno Archives are an important community resource that allows community members, particularly those with genealogical connections to San Francisco and the Bay Area, to access information about their own history. Many of the students in my class who identify as second- and third-generation Asian immigrants have expressed serious concern that

they would no longer have access to those records if the San Bruno Archives were to close. I share those concerns. If the San Bruno Archives close, it would be a real loss to the community.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 8th day of October, 2026, in Berkeley, California.