ROB BONTA
Attorney General of California
LARA HADDAD
R. MATTHEW WISE
Supervising Deputy Attorney General
NANDING CHEN (SBN 348808)
JOE MEEKER (SBN 335725)
S. CLINTON WOODS (SBN 246054)
CAROLYN DOWNS (SBN 353455)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6720
Fax: (916) 731-2124
E-mail: Carolyn.Downs@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**STATE OF CALIFORNIA,**

Plaintiff,

**v.**

**UNITED STATES NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; BRADFORD WILSON,** in his official capacity as Archivist of the United States,

Defendants.

Case No. 5:26-cv-11868-NW

**DECLARATION OF CAITLIN KELIIAA IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Caitlin Keliiaa, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am an Associate Professor in the History Department at the University of California, Santa Cruz, and have taught at the University since 2020. I grew up in the East Bay and am the product of the University of California system: I earned my B.A. in Native American

Studies and Ethnic Studies from the University of California, Berkeley, my M.A. in American Indian Studies from University of California, Los Angeles, and my Ph.D. in Ethnic Studies from UC Berkeley in 2019. My research explores the intersections of race, gender, and labor and their historical consequences, mainly focusing on Native experiences in the West in the early 20th century.

3. I am a citizen of the Yerington Paiute Tribe and a descendant of the Washoe Tribe of Nevada and California.

4. The San Bruno Archives house extensive records that are uniquely important to my family history and my research on Native American history in the West.

5. For example, the Archives contain records from the Bureau of Indian Affairs (BIA), individual student files for Indian Boarding Schools (including the Stewart Indian School and the Greenville Indian School), and importantly, applications and documents relating to the California Indian Judgment Rolls. These rolls are a historical list created by the BIA to identify individuals eligible to receive settlements from lawsuits against the federal government. People of California Indian descent rely on those documents to trace their genealogy, establish their tribal citizenship and more. My own family's files, including my grandparent's boarding school records, are in the Archives. Without those files, I would not have been able to understand my family's experiences at Stewart Indian School.

6. I am the author of *Refusing Settler Domesticity: Native Women's Labor and Resistance in the Bay Area Outing Program*. The book examines the experiences of Native women domestic workers who labored in Bay Area homes through the "outing" system. In the early 20th century, Indian boarding schools contracted out student laborers to work for white farms, homes and businesses. My book is the first comprehensive study of this Northern California-based system, under which over a thousand Native women from Indian boarding schools all over the West were coercively recruited to work as live-in housemaids in affluent homes across Berkeley, Oakland and the greater Bay Area from 1918 to 1942.

7. The book, which is entirely based on archival research, would not have been possible without records in the San Bruno Archives. The outing files include letters from

concerned parents, women advocating for better wages and matters of more insidious nature. The Archive's records are similarly essential to my ongoing research on the history of Western-based Indian hospitals, the topic of my next book. Currently, my team and I are scouring health-related materials in the San Bruno facility, including quarantine reports, nurse reports, hospital admission records and everything in between.

8. Closing the Archives in San Bruno will cause significant harm to my research. Because my scholarship is based on archival data, original research and access to original sources like those in the San Bruno Archives is paramount.

9. Digitization cannot solve the problem. Even assuming all the documents in the Archives could withstand digitization without suffering significant damages, digitizing the entire collection at San Bruno will be an impossibly complicated and arduous undertaking given its volume and complexity. Just the other day, it took me, a trained historian, and my team of students many hours to scan fewer than two hundred pages of documents. It is an incredibly involved and manual process that requires, for example, the careful removal of staples and gentle handling of delicate papers in different shapes and sizes. Further, I understand that the digitization of BIA records is not currently a NARA priority. Nonetheless, it would be an insurmountable endeavor.

10. Additionally, important contextual information about a document—such as the color of the ink and the way a file is organized—will get lost in the process of digitization. And browsing in the archives can sometimes lead to serendipitous discovery of files of interest. That experience of uncovering history in real time is not possible without access to the physical archives.

11. Assistance from staff and researchers at the San Bruno Archives has also been invaluable. I am worried that their institutional knowledge will be lost with the closure of the San Bruno Archives. I have frequently relied on their help in my research, for example by calling up experts who specialize in the BIA.

12. It would be cost prohibitive for my students and me to travel to other locations for our research. We are lucky to be a short drive or a BART ride away from the San Bruno

Archives. Traveling to other cities would require significant expenses that would not be possible for my team to afford.

13. I have felt a sense of urgency to complete the research for my new book after the federal government announced the closure, and people have been booking out appointment slots in advance. At the moment, there are no slots available for me in November. The Archives has also been incredibly busy since the closure was announced.

14. Closing the Archives is contrary to NARA's mission of keeping the records available for the public's benefit. It will be a tragedy if these precious records documenting the history of Native communities are taken away from them. Further, while I largely speak to Native history, the San Bruno archive is relevant to everyone. If your family lived in the Bay Area at one time, census records at this facility will prove it. Whether you're Italian American, African American or Native American, this archive contains your history.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 25 day of October, 2026, in Santa Cruz, California.

